[8 NYS3d 657]

In the Matter of DANIEL CHAN, an Attorney, Respondent. GRIEV-
ANCE COMMITTEE FOR THE SECOND, ELEVENTH, AND THIR-
TEENTH JUDICIAL DISTRICTS, Petitioner.

Second Department, May 27, 2015

APPEARANCES OF COUNSEL

*Diana Maxfield Kearse,* Brooklyn (*Colette M. Landers* of counsel), for petitioner.

*Monfort, Healy, McGuire & Salley LLP,* Garden City (*Donald S. Neumann, Jr.,* of counsel), for respondent.

## OPINION OF THE COURT

Per Curiam.

The Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts served the respondent with a verified petition, dated December 10, 2013, containing four charges of professional misconduct. After a preliminary conference on July 8, 2014, and a hearing on September 30, 2014, the Special Referee sustained all four charges. The petitioner now moves to confirm the report of the Special Referee, and to impose such discipline upon the respondent as this Court deems just and proper. The respondent also moves to confirm the report of the Special Referee, and requests that the matter be remitted back to the petitioner for such action as it deems appropriate in light of the evidence in mitigation presented at the hearing.

### The Petition as Amended

Charge one alleges that the respondent neglected a legal matter entrusted to him by a client, Lawrence Tesch, in violation of former Code of Professional Responsibility DR 6-101 (a) (3) and DR 1-102 (a) (7) (22 NYCRR 1200.30 [a] [3]; 1200.3 [a] [7]). In or about January 2007, Mr. Tesch requested the respondent, on behalf of Prestige Commercial Corp. and PCC Services, Inc., to assist in the collection of arrears on a $373,000 mortgage loan to Alexe Florea and Mariana Florea (hereinafter together the Floreas) relating to certain property in Babylon, New York. Mr. Tesch requested the respondent to send a notice of default to the Floreas, and, if the default was not cured, to commence an action to foreclose the mortgage. In January and March 2008, the respondent sent notices of default to the Floreas, indicating their default as of December 1, 2006, on the monthly payments due on the underlying note. The Floreas did not cure the default. In 2009, Mr. Tesch directed the respon-

dent to commence an action to foreclose the mortgage, but the respondent failed to do so.

Charge two alleges that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of former Code of Professional Responsibility DR 1-102 (a) (4) and (7) (22 NYCRR 1200.3 [a] [4], [7]). From in or about July 2007 until June 2012, the respondent falsely advised Mr. Tesch that he had commenced, and was prosecuting, an action to foreclose the Floreas' mortgage. Between August 2009 and March 2012, the respondent sent the following email correspondence to Mr. Tesch:

> "Florea—Judgment signed, waiting on Referee to determine his availability for the sale date" (email dated Aug. 4, 2009);

> "Florea—Sale set for Wednesday, 9/30/09 10 a.m., Babylon Town Hall" (email dated Sept. 1, 2009);

> "[Florea's] Bankruptcy trustee has confirmed that we are free to continue with the foreclosure. I am waiting for the Referee to get back to me on availability" (email dated Jan. 29, 2010);

> "We have been served with an Order to Show Cause in this matter. . . . In other words, we are stayed from proceeding with tomorrow's auction pending the hearing" (email dated Apr. 5, 2010);

> "As per our telephone conversation, today's auction has been cancelled due to yet another bankruptcy filing. This should be the last strike for the borrowers with regard to future bankruptcy filings. It is an unwritten rule that multiple filings beyond two (for each borrower/owner) are considered to be an abuse of the system for fraudulent purposes" (email dated Mar. 22, 2011);

> "I requested an emergency hearing on our motion to dismiss the bankruptcy for failure to file a realistic plan and to express our outrage for the delay. I am scheduled to appear before the court on Tuesday 7/19. The court is allowing Florea to drag this out (due to the judge's summer vacation schedule) ad [sic] I requested the hearing to demand that the court move this along. The motion will eventually be granted, in my opinion. The question is

when. I am trying to get them off their behinds and get this thing rolling" (email dated July 14, 2011);

"Florea hearing went ok. Made my points to the Judge. Reserving decision. Hope to hear from the court shortly" (email dated July 21, 2011);

"Bankruptcy judge's law clerk says we will have the signed order lifting the stay (and allowing us to reschedule the sale) by the end of the week. I am following up daily to the point where the law clerk is clearly annoyed. I don't care. I will continue to follow up until we get the signed order" (email dated Oct. 5, 2011);

"I am waiting for the case to be placed on calendar for oral argument. I will let you know when this date is established" (email dated Mar. 19, 2012);

"I have been advised that our case has been assigned to Justice Randall T. Eng, Appellate Division, Second Dept. Eng is a fair-minded judge with a good reputation. Formerly served in Queens Criminal Court, then Queens Supreme Court" (email dated Mar. 22, 2012).

At the time the respondent sent the aforesaid emails, he knew that the information in the emails was false.

Charge three alleges that the respondent neglected a legal matter entrusted to him by a client, Lawrence Tesch, in violation of former Code of Professional Responsibility DR 6-101 (a) (3) and DR 1-102 (a) (7) (22 NYCRR 1200.30 [a] [3]; 1200.3 [a] [7]). In or about July 2007, Mr. Tesch requested the respondent, on behalf of Prestige Commercial Corp. and PCC Services, Inc., to commence and prosecute a foreclosure action regarding certain premises in Jamaica, New York, due to the default of the obligor, Charles Stubbs, on a mortgage note in the amount of $115,000, secured by a note on the premises. In September 2007, the respondent commenced an action, *PCC Services, Inc. v Stubbs,* in the Supreme Court, Queens County. In or about April 2009, after Mr. Stubbs died, the court stayed the action to allow for the substitution of a personal representative of his estate. The respondent failed to further prosecute the foreclosure action.

Charge four alleges that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of former Code of Professional Responsibility DR 1-102 (a) (4) and (7) (22 NYCRR 1200.3 [a] [4], [7]). Between

April 2009 and June 2012, the respondent falsely advised Mr. Tesch that he was prosecuting the Stubbs foreclosure action. Between September 2009 and June 2012, the respondent sent the following email correspondence to Mr. Tesch:

"Motion to dismiss under consideration by court, awaiting ruling" (email dated Sept. 1, 2009);

"Submitting order to appoint referee and grant us permission to substitute Estate of Stubbs in place of the individual, who died after the action was commenced" (email dated May 12, 2011);

"Referee has been appointed in the foreclosure. I have reached out to the Referee and waiting for his callback. In the interim, I am preparing referee's calculation of amount due" (email dated July 14, 2011);

"Provided Referee with figures you forwarded. Waiting for Referee to send back Referee's Report and Oath" (email dated July 27, 2011);

"Referee is back in his office. Lost power during the storm. I asked him to give our matter priority. As soon as he returns the Referee's calculations, I will submit it to the Court and apply for the judgment of Foreclosure and Sale" (email dated Sept. 9, 2011);

"Judge has scheduled a pre-judgment conference for 10/31/11. Many courts are making this mandatory prior to entry of the judgment to see if a workout can be arranged. I pointed out to the law clerk that the borrower is deceased and it is highly unlikely that any of the heirs will attend. In addition, they have made no offers to cure the arrears. The lender does not have to attend. I will appear on your behalf. Assuming that no one appears for the Borrower, we can submit the Judgment, which is the last step before scheduling the sale" (email dated Oct. 5, 2011);

"On Stubbs, no one showed up for the mandatory settlement conference. I am waiting on the Court to grant me permission to submit the Judgment of Foreclosure and Sale, which should be forthcoming shortly" (email dated Dec. 5, 2011);

"I should have a date for Stubbs shortly. Waiting for Referee to confirm sale date" (email dated Mar. 9, 2012);

"Stubbs sale date will be Tuesday, June 5, 2012 at 10 a.m. Waiting for Referee's confirmation" (email dated May 2, 2012);

"You have requested an explanation of the postponement of today's foreclosure sale. Upon Mr. Stubb's death, his heirs inherited the property, since he died intestate (without a will). Therefore, the children acquired the property by operation of law. The estate does not have to be probated. It happens automatically. One of the heirs, Gary Shade, has filed a Chapter 13 bankruptcy petition. Therefore, we are stayed by federal bankruptcy laws from foreclosing his interest in the property. Please contact me if there re [sic] any remaining questions" (email dated June 5, 2012).

At the time that the respondent sent the aforesaid emails, he knew that the information in the emails was false.

Based on the evidence adduced, and the respondent's admissions, the Special Referee properly sustained the charges. Accordingly, the petitioner's motion to confirm the Special Referee's report is granted. The respondent's cross motion is granted to the extent that it seeks to confirm the report of the Special Referee, and otherwise denied.

In mitigation, the respondent asks this Court to consider the following factors: that he did not act with venality; his remorse; the absence of financial gain; the medical evidence indicating that he endured multiple life-threatening illnesses, and that he suffered from periods of depression, as well as the unlikelihood of reoccurrence in light of his therapeutic efforts; and the character letters submitted on his behalf.

Notwithstanding the respondent's claim that he neither acted with venality, nor received any financial gain, " 'venality' requires only a finding that respondent deliberately and intentionally engaged in deception, and does not require a finding of malice or intent to profit" (*Matter of Kantor*, 241 AD2d 103, 105 [1998]). Here, the respondent "deliberately and intentionally engaged in deception" with his series of false emails to his client over a substantial period of time in an elaborate effort to conceal his neglect. Further, the respondent's disciplinary history is not unblemished. The respondent received a letter of caution for similarly misleading a client concerning the status of that client's legal matter, and an admonition for engaging in conduct that adversely reflects on his

fitness to practice, in that he allowed his professional judgment to be clouded by his relationship with a nonlawyer during the course of a real estate transaction.

Under the totality of the circumstances, we find that the respondent's conduct warrants his suspension from the practice of law for a period of two years.

RIVERA, J.P., SKELOS, DILLON, BALKIN and DICKERSON, JJ., concur.

Ordered that the petitioner's motion to confirm the Special Referee's report is granted; and it is further,

Ordered that the respondent's cross motion is granted to the extent that it seeks to confirm the report of the Special Referee, and otherwise denied; and it is further,

Ordered that the respondent, Daniel Chan, is suspended from the practice of law for a period of two years, commencing June 26, 2015, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than December 27, 2016. In such application, the respondent shall furnish satisfactory proof that during said period he: (1) refrained from practicing or attempting to practice law, (2) fully complied with this order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended, and resigned attorneys (see 22 NYCRR 691.10), (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11 (c) (2), and (4) otherwise properly conducted himself; and it is further,

Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, Daniel Chan, shall desist and refrain from (1) practicing law in any form, either as principal or agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,

Ordered that if the respondent, Daniel Chan, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 691.10 (f).